OWEN T. ROONEY, ESQ. (Bar No. 127830)          [G.C. 6103]
EDRINGTON, SCHIRMER & MURPHY LLP
The Terraces
2300 Contra Costa Blvd., Suite 450
Pleasant Hill, CA  94523
Telephone:  (925) 827-3300
Facsimile:   (925) 827-3320

Attorney for Defendants
BAY AREA RAPID TRANSIT DISTRICT and
NOLAN PIANTA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO BRANCH

| | |
|---|---|
| MEGAN SHEEHAN,<br><br>      Plaintiff,<br><br>    v.<br><br>BAY AREA RAPID TRANSIT DISTRICT, UNKNOWN ASSAILANTS 1-4, COUNTY OF ALAMEDA, and DOES 1-20, inclusive.<br><br>      Defendants. | Case No.  C14-03156 LB<br><br>**DEFENDANTS' NOTICE OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:**     **February 4, 2016**<br>**Time:**     **9:30 a.m.**<br>**Courtroom:**  **C, 15th Floor** |

///
///
///
///
///
///
///
///
///
///

Case No. C14-03156 LB – Motion for Summary Judgment

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................... 2

II.     CAUSES OF ACTION IN THIRD AMENDED COMPLAINT AND

        RELIEF SOUGHT ........................................................................ 2

III.    STATEMENT OF FACTS ............................................................. 3

        A. Facts Before Arriving At Santa Rita Jail ..................................... 3

        B. Facts Regarding Events at Santa Rita Jail .................................... 5

        C. Facts Regarding *Monell* Claim ................................................. 10

IV.     LEGAL ANALYSIS ...................................................................... 13

        A. Officer Pianta's Use of Force Was Reasonable ........................... 13

        B.  Officer Pianta Is Entitled to Qualified Immunity ...................... 14

        C.  There Is No *Monell* Liability Against BART ............................. 17

        D. There Was No Constitutional Violation for a Civil Code §52.1 Claim ....... 19

V.      CONCLUSION ............................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Blankenhorn v. City of Orange,*
    485 F.3d 463 (9th Cir. 2007) ................................................................ 14

*Brosseau v. Haugen,*
    543 U.S. 194, 125 S.Ct., 596, 160 L.Ed 2d 583 (2004)........................................ 16

*Bryan v. MacPherson,*
    630 F.3d 805, 826 (9th Cir. 2010) ......................................................... 15, 17

*City and County of San Francisco v. Sheehan,*
    135 S.Ct. 1765 (2015).................................................................... 14-17

*City of Oklahoma City v. Tuttle,*
    471 U.S. 808 (1985)........................................................................ 18

*Dorger v. City of Napa,*
    2013 U.S. Dist. LEXIS 153696 ............................................................. 19

*Forrester v. County of San Diego,*
    25 F. 3d 804 (9th Cir., 1994) ............................................................... 14

*Graham v. Connor,*
    490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed 2d. 443 (1989)...................................... 13, 15

*Harlow v. Fitzgerald,*
    457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed 2d 396 (1982)........................................ 14

*Knapps v. City of Oakland,*
    647 F.Supp.2d 1129 (N.D. CA, 2009) ....................................................... 19

*Manetta v. City of Seattle,*
    409 F.3d 1113 (9th Cir. 2005) ............................................................... 18

*Mattos v. Agarano,*
    590 F.3d 1082 (9th Cir. 2010) ............................................................... 15

*McSherry v. City of Long Beach,*
    584 F.3d 1129 (9th Cir. 2009) ............................................................... 18

*Monell v. Dept. of Social Services,*
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed 2d 611 (1978)........................................... 1, 2, 10, 17, 18

*Mullenix v. Luna,*
    2015 U.S. LEXIS 7160, 136 S.Ct. 305 (November 9, 2015)................................. 16

*Palacios v. City of Oakland ,*
    970 F.Supp. 732 (N.D. CA 1997) ......................................................... 14

*Pearson v. Callahan,*
    555 U.S. 233, 129 S.Ct. 808, 172 L.Ed2d 565 (2009)........................... 15-17

*Rodriguez v. City of Fresno,*
    819 F.Supp.2d 937 (E.D. CA 2011)...................................................... 19

*Saucier v. Katz,*
    533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed. 2d 272 (2001)....................... 13, 15

*Thompson v. City of Los Angeles,*
    885 F.2d 1439 (9th Cir. 1988) ............................................................ 18

*Volterra Semiconducter v. Primarion, Inc.,*
    796 F.Supp.2d, 1025 (N.D. CA 2011) ................................................. 16


**STATUTES**

42 U.S.C. §1983.................................................................................. 2, 17,
    19

Civil Code §52.1 ................................................................................. 1, 2,
    19

Federal Rule of Civil Procedure 56 ...................................................... 1

Government Code §3304(d)(2)(f)........................................................... 13

Penal Code §835a ............................................................................... 14, 17

OWEN T. ROONEY, ESQ. (Bar No. 127830)                    [G.C. 6103]
EDRINGTON, SCHIRMER & MURPHY LLP
The Terraces
2300 Contra Costa Blvd., Suite 450
Pleasant Hill, CA  94523
Telephone:  (925) 827-3300
Facsimile:   (925) 827-3320

Attorney for Defendants
BAY AREA RAPID TRANSIT DISTRICT and
NOLAN PIANTA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO BRANCH

| | |
|---|---|
| MEGAN SHEEHAN,<br><br>        Plaintiff,<br><br>    v.<br><br>BAY AREA RAPID TRANSIT DISTRICT,<br>UNKNOWN ASSAILANTS 1-4, COUNTY<br>OF ALAMEDA, and DOES 1-20, inclusive.<br><br>        Defendants. | Case No.  C14-03156 LB<br><br>**DEFENDANTS' NOTICE OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:        February 4, 2016**<br>**Time:        9:30 a.m.**<br>**Courtroom:  C, 15th Floor** |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 4, 2016 at 9:30 a.m. in Courtroom C of the above-entitled court, defendants BAY AREA RAPID TRANSIT DISTRICT (BART) and NOLAN PIANTA will move the court for an Order granting summary judgment or partial summary judgment pursuant to Federal Rule of Civil Procedure 56 in the above-entitled action on the grounds that there is no genuine issue of material fact that:

1)  The force use by defendant Pianta was reasonable;

2)  That defendant Pianta is entitled to qualified immunity;

3)  There is no viable *Monell* claim against BART and

4)  That there is no constitutional violation to state a claim under Civil Code §52.1.

1

1    Thus, defendants BART and PIANTA are thereby entitled to summary judgment as a matter of

2    law.

3           Moving parties seek an Order granting this Motion for Summary Judgment and

4    dismissing this action in its entirety with prejudice.  This Motion is based upon this Notice of

5    Motion and Memorandum of Points and Authorities and the Declaration of Owen T. Rooney,

6    Declaration of Bryan Trabanino, Declaration of Reynaldo Carrasco, Declaration of Kenton

7    Rainey, Declaration of Alexander Jason and Declaration of Jared Zwickey in support thereof

8    and all pleadings in this action.

9    DATED:  January 7, 2016                    EDRINGTON, SCHIRMER & MURPHY LLP

10

11                                          By ____/s/ Owen T. Rooney_____
                                               Owen T. Rooney, Esq.
12                                             Attorney for Defendants

13                           **I.   INTRODUCTION**

14          On the evening of March 14, 2014, plaintiff Megan Sheehan was arrested at the Lake

15   Merritt BART station for public intoxication after a BART police officer determined that she

16   was passed out.  Plaintiff then struggled with that officer and was also arrested for obstructing

17   and resisting a police officer and battery on a police officer.  Plaintiff was then transported to

18   Santa Rita Jail by defendant Pianta where she again became belligerent and attempted to punch

19   Officer Pianta.  Acting in self defense, Officer Pianta performed an arm bar takedown.  As a

20   result, plaintiff sustained facial and dental injuries of which she now complains.

21          **II.      CAUSES OF ACTION IN THIRD AMENDED COMPLAINT**

22                        **AND RELIEF SOUGHT**

23          The Third Amended Complaint[1] contains causes of action for: (1) 42 U.S.C. §1983 for

24   violation of her 4th Amendment rights; (2) 42 U.S.C. §1983 for violation of her 14th

25   Amendment rights; (3) *Monell*; and (4) Civil Code §52.1 (Bane Act).

26          Defendants BART and Pianta seek summary judgment in connection with the first

27   _____

28   [1]  The City of Oakland and Oakland police officer Stolzman were added with the Third
     Amended Complaint.

2

1  through fourth causes of action.

2  ## III.   STATEMENT OF FACTS

3  **A.   Facts Before Arriving At Santa Rita Jail**

4  On March 17, 2014, plaintiff worked as a bartender/waitress at the Irish Bank in San

5  Francisco.  Plaintiff started her St. Patrick's Day celebration during her lunch break when she

6  went to a nearby Irish Bar, Murphy's, where she consumed two shots of Jameson whiskey and

7  one pint of Guinness beer.  (Declaration of Owen T. Rooney, Exhibit A, Sheehan Deposition, p.

8  18:19-19:8.)  She was "buzzed" upon returning to work 20 minutes later.  (Declaration of Owen

9  T. Rooney, Exhibit A, Sheehan Deposition, p. 20:15-17.)

10  When her work shift ended at 3 p.m., plaintiff stayed at the Irish Bank where she

11  proceeded to consume two more shots of Jameson and two 16-oz. Bud Lights.  (Declaration of

12  Owen T. Rooney, Exhibit A, Sheehan Deposition, p. 21:7-23:2.)  She was "drunk" when she

13  left the Irish Bank at approximately 4 p.m. (Declaration of Owen T. Rooney, Exhibit A,

14  Sheehan Deposition, p. 23:13-15 and p. 24:8-10.)

15  After leaving the Irish Bank, plaintiff intended to go to Walnut Creek to continue her St.

16  Patrick's Day revelry.  (Declaration of Owen T. Rooney, Exhibit A, Sheehan Deposition, p.

17  24:14-20.)  Initially, plaintiff denied having any additional alcohol after leaving the Irish Bank.

18  (Declaration of Owen T. Rooney, Exhibit A, Sheehan Deposition, p. 25:4-6.)  However, her

19  first encounter with the BART Police Department that evening was at 6:34 p.m.  (Declaration

20  of Bryan Trabanino, ¶2.)  When confronted with this 2½-hour time gap, plaintiff conceded that

21  she may have returned to Murphy's or purchased a bottle of alcohol somewhere en route to the

22  Montgomery BART station.  (Declaration of Owen T. Rooney, Exhibit A, Sheehan Deposition,

23  p. 88:25-89:24.)

24  Intending to travel on BART from San Francisco to Walnut Creek, plaintiff should have

25  taken a Pittsburg train.  (Declaration of Owen T. Rooney, Exhibit A, Sheehan Deposition, p.

26  26:9-12.)  Instead, plaintiff did not know what train she boarded because she ultimately wound

27  ///

28  ///

3

1    up at the Lake Merritt BART station.[2]  Plaintiff has no recall of even being at the Lake Merritt

2    BART station or what time she boarded or exited the train.  (Declaration of Owen T. Rooney,

3    Exhibit A, Sheehan Deposition, p. 26:13-27:8.)

4         In fact, plaintiff had no recall of even being at the Lake Merritt BART station or in a

5    holding cell at the Lake Merritt station.  (Declaration of Owen T. Rooney, Exhibit A, Sheehan

6    Deposition, p. 30:11-13 and p. 31:14-17.)  Taking it one step further, plaintiff had no recall of

7    her initial encounter with any BART police officers at the Lake Merritt station.  (Declaration of

8    Owen T. Rooney, Exhibit A, Sheehan Deposition, p. 27:13-24.)  Particularly, plaintiff did not

9    recall being verbally abusive[3] to BART police officer Trabanino, pushing the officer or a

10    struggle with two BART police officers on the platform at Lake Merritt during which she

11    kicked one officer.  (Declaration of Owen T. Rooney, Exhibit A, Sheehan Deposition, p. 28:3-

12    30:7 and Declaration of Reynaldo Carrasco, ¶4. )

13         After boarding the BART train at Montgomery Street, she has no recollection of

14    anything with the exception of urinating in the police car en route to the Santa Rita Jail and

15    waking up in the hospital hours later.  (Declaration of Owen T. Rooney, Exhibit A, Sheehan

16    deposition, p. 32:18-33:16.)

17         At 6:34 p.m. BART police officer Trabanino responded to a call of an intoxicated

18    person on a bench at the Lake Merritt BART station.  Officer Trabanino found plaintiff

19    unresponsive.  When she came to, plaintiff displayed signs of intoxication, including slurred

20    speech and bloodshot and watery eyes.  Ms. Sheehan had difficulty locating her identification.

21    (Declaration of Bryan Trabanino, ¶¶2-5 and Declaration of Reynaldo Carrasco, ¶5.)    Ms.

22    Sheehan incorrectly thought she was either at the Powell or Montgomery Street stations.

23    (Declaration of Bryan Trabanino, ¶6.)

24         Officer Trabanino determined that, due to her level of intoxication, she was unable to

25    care for herself.  During the detention, Ms. Sheehan became verbally argumentative, upset and

26

27    [2] The Lake Merritt BART station is not on the Pittsburg line.

28    [3] Plaintiff said, "Gimme me my f***ing ID" and "I'm actually a terrorist.  So if you want to call the cops, this would be a good time to do that."

said something to the effect of "give me my f***ing ID" and "I'm actually a terrorist, so if you want to call the cops this would be a good time to do that." (Declaration of Bryan Trabanino, ¶¶7-8.) Ms. Sheehan stated she had "like 4 shots" and "if you want to arrest me, arrest me." (Declaration of Bryan Trabanino, ¶¶9-10.)

Ms. Sheehan kept looking into her bag which is a known location for an individual to carry weapons. Officer Trabanino therefore removed plaintiff's bag from her reach and she said "there is a needle that will prick you." Plaintiff then pushed Officer Trabanino near the magazine holder on his duty belt. (Declaration of Bryan Trabanino, ¶11 and Declaration of Reynaldo Carrasco, ¶3.)

Officers Trabanino and Carrasco, who arrived to provide back up, took plaintiff to the ground. There was a struggle, and despite being told multiple times to stop resisting, plaintiff kicked Officer Carrasco in the left shoulder and the left side of the face. (Declaration of Bryan Trabanino, ¶¶12-13 and Declaration of Reynaldo Carrasco, ¶4.) As plaintiff was escorted to the holding cell, plaintiff continued to resist by dropping her weight, spreading her feet and Officers Trabanino had to use control holds to gain her compliance. (Declaration of Bryan Trabanino, ¶¶14-15 and Declaration of Reynaldo Carrasco, ¶6.) Ms. Sheehan was then arrested for obstructing a police officer, willfully resisting or delaying a police officer, battery on a police officer and public intoxication. (Declaration of Bryan Trabanino, ¶16.)

BART Officer Pianta was not the arresting officer and was assigned to transport plaintiff from Lake Merritt to Santa Rita. (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 60:10-15 and p. 98:10-25 and Exhibit E, Szopinski deposition, p. 112:21-113:2.) Upon arrival at Santa Rita, Officer Pianta escorted plaintiff from the police car into the booking area during which plaintiff unsuccessfully attempted to press her urine-soaked pants onto Officer Pianta's leg. (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 92:3-93:13.)

**B.    Facts Regarding Events at Santa Rita Jail**

Once inside the booking area, plaintiff initially sat on a bench in an alcove to the right of the booking windows. (Declaration of Owen T. Rooney, Exhibit C, Stolzman deposition, p.

29:2-16 and Exhibit D, Phillips deposition, p. 8:7-15.)   Plaintiff was obviously intoxicated based upon her behavior, slurred speech, that she had urinated on herself and her admission. (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 97:9-25; Exhibit C, Stolzman deposition, p. 29:23-30:14; p. 72:24-73:15; Exhibit D, Phillips deposition, p. 8:16-17 and Exhibit G, Hight deposition, p. 10:2-11:24.)

In time, plaintiff was called up to the booking window.   Officer Pianta was behind plaintiff; plaintiff's purse was on the counter and to her left.   (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 81:12-22.)   Officer Pianta was approximately an arm's-length behind plaintiff.   (Declaration of Owen T. Rooney, Exhibit C, Stolzman deposition, p. 73:21-24 and Exhibit G, Hight deposition, p. 9:21-23)

Pursuant to instructions from the booking deputies, Officer Pianta removed plaintiff's handcuffs so she could remove her earrings.   (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 84:9-12.)   Initially plaintiff was compliant.   (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 84:25-85:2.)

Plaintiff's demeanor then changed.   Particularly, Officer Pianta told plaintiff she would not be allowed to bring a hair tie into the jail; instead it would need to go with her personal property.   (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 85:3-7.)

Plaintiff then turned around and threw the hair tie which hit Officer Pianta in his hat; Officer Stolzman, an Oakland police officer who was at Santa Rita, thought the hair tie struck Officer Pianta in the upper chest or lower face area.   (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 85:8-10;  Exhibit C, Stolzman deposition, p. 30:15-31:12; Exhibit D, Phillips deposition, p. 12:5-9; and Exhibit G, Hight deposition, p. 11:25-12:25.)  This constituted battery on a police officer.   (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 85:8-23; Exhibit G, Hight deposition, p.  12:23-25 and Exhibit H, Carter, deposition, p. 12:24-13:1; and Exhibit D, Phillips deposition, p. 12:5-12)

In response, Officer Pianta simply said, "Really," because he was surprised at plaintiff's conduct.   (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 85:24-86:6.) Officer Pianta had a "minimal" reaction and remained stoic and professional.   (Declaration of

Owen T. Rooney, Exhibit C, Stolzman deposition, p. 73:25-74:10.)

Plaintiff then turned around and started "digging" through her purse with both hands. (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 89:6-12; Exhibit C, Stolzman deposition, p. 31:15-19; Exhibit D, Phillips deposition, p. 11:3-6 and Exhibit G, Hight deposition, p. 13:1-19.)  There was no reason for plaintiff to search through her purse, such as looking for her identification.  (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 89:13-25 and Exhibit C, Stolzman deposition, p. 31:20-32:3.)

Officer Pianta instructed plaintiff to let go of her purse "multiple times" ranging from two to six times.  (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 90:4-14; Exhibit C, Stolzman deposition, p. 74:11-15 Exhibit G, Hight deposition, p.  14:24-15:9.) Plaintiff did not comply with these instructions.  (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 102:25-103:6; Exhibit C, Stolzman deposition, p. 35:9-15; and Exhibit D, Phillips deposition, p. 14:9-17.)  Plaintiff might have been reaching for a weapon.  (Declaration of Owen T. Rooney, Exhibit C, Stolzman deposition, p. 33:17-34:4.)  The purse itself could be a weapon.  (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 76:4-8 and p. 82:14-20 and Exhibit C, Stolzman deposition, p. 75:21-22.)  Officer Pianta was afraid plaintiff would strike him with the purse (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 97:6-8) and he was worried that plaintiff was disobeying his commands.  (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 91:18-21.)

Plaintiff conceded her level of intoxication contributed to her lack of cooperation with the police.  (Declaration of Owen T. Rooney, Exhibit A, Sheehan Deposition, p. 40:8-11.)

Going through her purse escalated the situation.  (Declaration of Owen T. Rooney, Exhibit C, Stolzman deposition, p. 42:8-43:10.)  Due to plaintiff's behavior, Officer Pianta grabbed the purse.  (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 95:14-96:1; Exhibit C, Stolzman deposition, p. 33:23-34:4; and Exhibit D, Phillips deposition, p. 13:21-14:6.)  For officer safety reasons, when coupled with plaintiff's refusal to let go of the purse, Officer Stolzman approached plaintiff and Officer Pianta and also grabbed the purse and removed it from plaintiff's grasp.  (Declaration of Owen T. Rooney, Exhibit B, Pianta

1  deposition, p. 108:24-109:4; Exhibit C, Stolzman deposition, p. 35:6-20; and Exhibit G, Hight

2  deposition, p. 13:23-14:7 and p. 43:3-7.)

3      Officer Pianta then placed plaintiff in an arm bar control hold.  (Declaration of Owen T.

4  Rooney, Exhibit B, Pianta deposition, p. 75:15-25.)  This is a pain compliance technique to gain

5  control over the subject.  The technique involves placing the subject's arm in a locked position

6  and the police officer bends the wrist towards the elbow.  (Declaration of Owen T. Rooney,

7  Exhibit B, Pianta deposition, p. 106:16-107:5; and Exhibit G, Hight deposition, p. 13:23-14:21

8  and p. 15:10-20.)   The goal of the arm bar control hold is to put the subject into handcuffs

9  (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 107:6-9) and Officer

10  Stolzman concurred plaintiff needed to be handcuffed.   (Declaration of Owen T. Rooney,

11  Exhibit C, Stolzman deposition, p. 35:21-36:2.) The arm bar control hold was ineffective and

12  plaintiff pulled away from Officer Pianta.  (Declaration of Owen T. Rooney, Exhibit B, Pianta

13  deposition, p. 113:4-19.)

14      Officer Pianta also pushed plaintiff up against the counter for the booking window in

15  order to restrict her movements.   (Declaration of Owen T. Rooney, Exhibit B, Pianta

16  deposition, p. 116:7-9 and p. 114:11-20.)

17      Instead, plaintiff "kind of spun into" the arm bar control hold and proceeded to throw 2-

18  3 punches at Officer Pianta's face with her right hand.  (Declaration of Owen T. Rooney,

19  Exhibit B, Pianta deposition, p. 108:1-8, p. 110:11-15 and p. 118:5-13; Exhibit C, Stolzman

20  deposition, p. 76:3-13; Exhibit D, Phillips deposition, p. 15:19-16:24; Exhibit G, Hight

21  deposition, p.15:21-16:12; and Exhibit H, Carter deposition, p. 13:9-14:9.)

22      Handcuffs were not applied.   Officer Pianta no longer had the option to handcuff

23  plaintiff because of her attempt to punch him.  (Declaration of Owen T. Rooney, Exhibit C,

24  Stolzman deposition, p. 64:7-65:14.)

25      From Officer Hight's perspective, plaintiff was "at the beginning stages of what I could

26  interpret as a punch" and "trying to assault Officer Pianta" (Declaration of Owen T. Rooney,

27  Exhibit G, Hight deposition, p. 16:3-17:14.)

28       Plaintiff's punches did not strike Officer Pianta in the face, but at least one struck him

1  in the arm.   (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 74:12-20.)

2  Recognizing that the control hold was ineffective, in conjunction with her punches, Officer

3  Pianta's best option was to get plaintiff on the ground in order to control her.  (Declaration of

4  Owen T. Rooney, Exhibit B, Pianta deposition, p. 110:11-19.)

5      Police officers are trained to put resisting subjects on the ground to restrict their

6  movement. (Declaration of Owen T. Rooney, Exhibit G, Hight deposition, p. 44:3-11 and

7  Exhibit H, Carter deposition, p. 15:24-16:18.)

8      Officer Pianta ordered plaintiff to the ground.  (Declaration of Owen T. Rooney, Exhibit

9  B, Pianta deposition, p. 119:15-23.)   Oakland Officers Hight and Carter saw Officer Pianta

10  perform a leg sweep in response to plaintiff's attack.  (Declaration of Owen T. Rooney, Exhibit

11  G, Hight deposition, p. 17:11-18:8 and p. 19:3-6 and Exhibit H, Carter deposition, p. 14:2-15

12  and p. 30:15-18.)

13      Given plaintiff's failure to comply with the order to go to the ground, and in order to

14  protect himself, Officer Pianta took plaintiff to the ground.  (Declaration of Owen T. Rooney,

15  Exhibit B, Pianta deposition, p. 127:16-21.)  In doing so, he placed his right hand on plaintiff's

16  left shoulder and pushed her towards the ground while holding onto her left hand with his left

17  hand.   (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 127:22-129:21.)

18      Officer Pianta did not intend to injure plaintiff and her injuries were "unfortunate."

19  (Declaration of Owen T. Rooney, Exhibit B, Pianta deposition, p. 70:5-6 and p. 70:24-71:2; and

20  Exhibit C, Stolzman deposition, p. 71:13-17.)  Use of force is a part of a police officer's job

21  and force is not used to cause injuries.  (Declaration of Owen T. Rooney, Exhibit B, Pianta

22  deposition, p. 71:3-7 and Exhibit C, Stolzman deposition, p. 71:13-22.)

23      For his part, Officer Stolzman grabbed plaintiff's right forearm area with both of his

24  hands and briefly grabbed her arm.  This was done for officer safety reasons and to prevent

25  plaintiff from punching Officer Pianta.  (Declaration of Owen T. Rooney, Exhibit C, Stolzman

26  deposition, p. 65:25-67:7; Exhibit D, Phillips deposition, p. 15:19-16:14; and Exhibit E,

27  Szopinski deposition, p. 150:4-13; Exhibit G, Hight deposition, p. 43:2-17.)

28      Because of the rapidly evolving circumstances, there was no time for Officers Pianta

1   and Stolzman to coordinate efforts, let alone communicate their intentions.   (Declaration of

2   Owen T. Rooney, Exhibit B, Pianta deposition, p. 108:18-23; Exhibit C, Stolzman deposition,

3   p. 34:7-12 and p. 41:9-12; Exhibit G, Hight deposition, p. 43:18-44:2.)

4        Officers Pianta and Stolzman are employed with different agencies.   (Declaration of

5   Owen T. Rooney, Exhibit B, Pianta deposition, p. 19:17-18; and Exhibit C, Stolzman

6   deposition, p. 10:11-17) and did not know each other before the subject evening.   (Declaration

7   of Owen T. Rooney, Exhibit C, Stolzman deposition, p. 19:11-12.)

8        Four Oakland police officers opined Officer Pianta used a reasonable amount of force.

9   (Declaration of Owen T. Rooney, Exhibit C, Stolzman deposition, p. 71:10-12 and p. 77:11-14;

10  and Exhibit D, Phillips deposition, p. 20:12-22; Exhibit G, Hight deposition, p. 19:8-17 and

11  Exhibit H, Carter deposition, p. 18:4-11.)

12  **C.**       **Facts Regarding *Monell* Claim**

13       BART policy requires the officer's supervisor conduct a use of force investigation, in

14  this case Sgt. Szopinski.   (Declaration of Owen T. Rooney, Exhibit E, Szopinski deposition, p.

15  31:2-9 and p. 32:19-25.)   Sgt. Szopinski's investigation included interviewing plaintiff at the

16  Lake Merritt station and again at the hospital[4], reviewing the subject video, applying BART

17  Police Department's use of force policy, interviewing three Oakland police officers, two BART

18  community service officers and a Santa Rita Jail employee.   (Declaration of Owen T. Rooney,

19  Exhibit E, Szopinski deposition, p. 32:19-23, p. 31:2-6, p. 35:23-36:8, p. 38:9-12, p. 52:21-25,

20  p. 77:2-20, p. 107:6-17, p. 109:2-12, p. 149:5-24 and p. 160:16-161:23.)   The purpose of

21  interviewing the subject of the force, plaintiff in this case, is for "total transparency"

22  (Declaration of Owen T. Rooney, Exhibit E, Szopinski deposition, p. 33:5-16).   The use of

23  force investigation is to determine if the officer's conduct was within the BART Police

24  Department's policy.   (Declaration of Owen T. Rooney, Exhibit E, Szopinski deposition, p.

25  108:9-18.)

26

27  ----

    [4] There were two separate interviews because there were two separate uses of force, namely
28  force was used on the platform at the Lake Merritt station when plaintiff was initially arrested
    and then later at Santa Rita Jail.

1   During this investigation, Ms. Sheehan told Sgt. Szopinski that she "f***ed up."

2   (Declaration of Owen T. Rooney, Exhibit E, Szopinski deposition, p. 124:3-8.)

3   Sgt. Szopinski's use of force investigation concluded Officer Pianta used the necessary

4   amount of force to eliminate the threat posed by plaintiff.  (Declaration of Owen T. Rooney,

5   Exhibit E, Szopinski deposition, p. 154:24-155:18.)

6   According to policy, Sgt. Szopinski's report was then forwarded to the Watch

7   Commander, Lt. Lopez.  (Declaration of Owen T. Rooney, Exhibit E, Szopinski deposition, p.

8   163:2-6.)  Sgt. Szopinski revised the report in response to Lt. Lopez's questions.  (Declaration

9   of Owen T. Rooney, Exhibit E, Szopinski deposition, p. 164:5-165:3.)   Lt. Lopez also

10  concluded Officer Pianta's use of force was reasonable and within departmental policy.

11  (Declaration of Owen T. Rooney, Exhibit E, Szopinski deposition, p. 166:25-167:12.)

12  Sgt. Szopinski's report was then forwarded "up the chain of command" to a Use of

13  Force Review Board and Deputy Chief Jennings.  (Declaration of Owen T. Rooney, Exhibit E,

14  Szopinski deposition, p. 167:13-168:6 and Exhibit F, Cruz deposition, p. 65:17-66:3.)  The Use

15  of Force Review Board consisted of Sgt. Cruz, Lt. Coontz and Officer Lehman (Declaration of

16  Owen T. Rooney, Exhibit F, Cruz deposition, p. 38:10-14.)  Sgt. Cruz concluded Officer

17  Pianta's use of force was reasonable and within the use of force policy.  (Declaration of Owen

18  T. Rooney, Exhibit F, Cruz deposition, p. 45:6-11 and p. 78:17-79:4.)

19  Every use of force incident is reported and investigated through the Use of Force

20  Review process, including the officer's immediate supervisor, the Watch Commander and the

21  Use of Force Review Board including the Deputy Chief of Operations.  Ultimately, the Chief of

22  Police reviews the Use of Force Report and the Chief of Police has the authority to accept or

23  reject those findings.  Therefore, there are several layers to the Use of Force Review process.

24  This process is set forth in BART Police Department policy 302.  (Declaration of Kenton W.

25  Rainey, ¶¶4-5.)

26  Anyone in the review process can request that Internal Affairs conduct its own

27  investigation.  Internal Affairs can also initiate its own investigation.  BART also has an Office

28  of Independent Police Audit which can likewise conduct its own investigation to certain types

Case No. C14-03156 LB – Motion for Summary Judgment

1    of claims including excessive force.  The Office of Independent Police Audit has unfettered

2    access to the Internal Affairs Investigation and is required to monitor certain types of

3    complaints including excessive force.  The Office of Independent Police Audit presents the

4    findings to a Citizens Review Board.  Any discrepancies between the findings of the BART

5    Police Department and the Office of Independent Police Audit are submitted to BART's

6    General Manager who makes the final determination.  (Declaration of Kenton W. Rainey, ¶¶6-

7    7.)

8          The goal of the multi-layer Use of Force Review process, Internal Affairs and the Office

9    of Independent Police Audit is to ensure transparency within the BART Police Department.

10   (Declaration of Kenton W. Rainey, ¶¶5, 6 and 8.)

11         In early 2015, Sgt. Cruz (a defensive tactics instructor) met with Deputy Chief Glen-

12   Davis (Deputy Chief of Training), Lt. Lopez (Defensive Tactics) and Lt. Gregson (Lieutenant in

13   charge of Training) to discuss whether there was an issue with training within the BART Police

14   Department.  (Declaration of Owen T. Rooney, Exhibit F, Cruz deposition, p. 52:22-53:25, p.

15   54:14-55:23 and p. 59:8-17.)   There was a discussion about revising the training program

16   overall and not specifically due to plaintiff's case.  (Declaration of Owen T. Rooney, Exhibit F,

17   Cruz deposition, p. 61:7-25 and p. 62:20-63:4.)

18         BART Police Department has sustained 5-10 use of force investigations in the last four

19   years.   Of those cases, 3-4 cases involved the use of a taser, one was the drawing of a firearm

20   and one was failing to properly report the force to his supervisor and properly document the use

21   of force.  (Declaration of Owen T. Rooney, Exhibit I, Haight deposition, p. 10:6-10 and p. 79:6-

22   82:22).

23         Internal Affairs also investigated the subject incident, including interviewing Oakland

24   police officers, all three BART officers and two BART community service officers, obtaining

25   additional Oakland Police Department video and interviewing one of the two arrestees at Santa

26   Rita Jail.  (Declaration of Owen T. Rooney, Exhibit I, Haight deposition, p. 24:14-26:10.)

27   Internal Affairs does a "360 degree investigation" which is more thorough than the Use of

28   Force investigation.  (Declaration of Owen T. Rooney, Exhibit I, Haight deposition, p. 27:10-25

12

and p. 35:23-36:10.)   The investigation has been tolled.[5]   (Declaration of Owen T. Rooney, Exhibit I, Haight deposition, p. 23:10-24 and Exhibit J, Rainey deposition, p. 67:4-16.)

The BART Police Department requires more than three times the amount of training than the Peace Officer Standards and Training (POST) requirement.   Specifically, POST requires a minimum of 24 hours of training every two years.   BART's officers are required to receive 40 hours of POST training annually.   BART's Chief of Police does not know of any other local police agency that requires 40 hours of annual POST training.   (Declaration of Kenton W. Rainey, ¶2.)

The BART Police Department does not have a long-standing practice, policy or custom constituting a standard operating procedure of permitting constitutional violations or ratifying constitutional violations.   (Declarations of Kenton W. Rainey, ¶¶ 3-4 and Jared Zwickey, ¶14.)

## IV.   LEGAL ANALYSIS

**A.   Officer Pianta's Use of Force Was Reasonable**

Under the Fourth Amendment, police may use only such force as objectively reasonable under the circumstances.   *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed 2d. 443 (1989).

Quoting from *Graham v. O'Connor*, *supra*, the Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed. 2d 272 (2001) held that claims of excessive force must be analyzed under an objective reasonableness standard.   Because "police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain and rapidly evolving — about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective, the Court cautioned against the 20/20 vision of hindsight "  *Id.* at p. 205.   One of the factors to be considered in evaluating whether an officer is entitled to qualified immunity for alleged excessive force is whether the suspect is "actively resisting arrest."  *Id.*

"Neither tackling nor punching a suspect to make an arrest necessarily constitutes

---

[5] Government Code §3304(d)(2)(f) provides for tolling while a civil lawsuit is pending.

1  excessive force.  Not every push or shove, even if it may seem unnecessary in the peace of the

2  judge's chambers,' . . . violates the Fourth Amendment."  *Blankenhorn v. City of Orange*, 485

3  F.3d 463, 477 (9th Cir. 2007) (Citation omitted.).

4      "Police officers are not required to use the least intrusive degree of force possible; they

5  are required only to act within a reasonable range of conduct."  *Palacios v. City of*

6  *Oakland*, 970 F.Supp. 732, 740 (N.D. CA 1997); *Forrester v. County of San Diego*, 25 F. 3d

7  804, 807 (9th Cir., 1994).  In evaluating whether force is excessive, the issue is whether the

8  officer "acted within a reasonable range of conduct, not whether in hindsight he might have

9  used a less intrusive degree of force." *Palacios, supra.*

10     Penal Code §835a provides that a police officer "need not retreat or desist from his

11  efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall

12  such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable

13  force to effect the arrest or to prevent escape or to overcome resistance."

14     There is no question that plaintiff was combative and threw a punch at Officer Pianta.

15  A police officer has a right to defend himself.  (Penal Code §835a.)

16     Under *Palacios*, *supra*, the test is whether the use of force was reasonable and not

17  whether the least amount of force was used.  Thus, a hindsight test is not legally correct which

18  plaintiff's strategy is.  Using a takedown technique in defense of plaintiff's attack was an

19  objectively reasonable act given the fact that plaintiff was the aggressor and threw a punch at

20  Officer Pianta.

21     Officer Pianta's takedown was not excessive under the present circumstances.  Officer

22  Pianta acted reasonably in defending himself from plaintiff's attack.

23  **B.      Officer Pianta Is Entitled to Qualified Immunity**

24     Qualified immunity protects government officials from civil liability if their conduct

25  does not violate clearly established rights of which a reasonable public official would have been

26  aware.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed 2d 396 (1982).

27  Qualified immunity gives governmental officials "breathing room to make reasonable but

28  mistaken judgments by protecting all but the plainly incompetent or those who knowingly

14

violate the law." *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015).

The *Sheehan* Court held that even if an officer acted contrary to training did not, in and of itself, negate qualified immunity.   A plaintiff cannot avoid summary judgment by simply producing an expert's report that criticized the officers' conduct as "imprudent, inappropriate, or even reckless." *Id.* at p. 1777.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known…. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 233, 129 S.Ct. 808, 815, 172 L.Ed2d 565 (2009).

The calculus of reasonableness must embody allowance for the fact that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Graham v. Connor, supra,* at p. 396-397.   The Court cautioned against a 20/20 hindsight test, "in favor of deference to the judgment of reasonable officers on the scene." S*aucier*, *supra*, at p. 205.

"An officer will therefore be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable." *Mattos v. Agarano*, 590 F.3d 1082, 1089 (9th Cir. 2010).

As the Ninth Circuit recently held:

> Rather, we examine the totality of the circumstances and consider "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham.* This analysis allows us to determine objectively the amount of force that is necessary in a particular situation. … The most important factor under *Graham* is whether the suspect posed an "immediate threat to the safety of the officers or others.  A simple statement by an officer that he fears for his safety or the safety others is not enough; there must be objective factors to justify such a concern.  *Bryan v. MacPherson,* 630 F.3d 805, 826 (9th Cir. 2010) (Citations omitted.)

Case No. C14-03156 LB – Motion for Summary Judgment

1    "Qualified immunity shields an officer from suit when she makes a decision that, even if

2    constitutionally deficient, reasonably misapprehends the law governing the circumstances she

3    confronted.  (qualified immunity operates to protect officers from the sometimes hazy border

4    between excessive and acceptable force.)"  *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct.,

5    596, 160 L.Ed 2d 583 (2004).    Reasonableness under the Fourth Amendment "is not capable

6    of precise definition or mechanical application." *Id.* at p. 199.

7    Recently, in *Mullenix v. Luna*, 2015 U.S. LEXIS 7160, 136 S.Ct. 305 (November 9,

8    2015) the U.S. Supreme Court repeated the rule that regarding qualified immunity "the

9    dispositive question is whether the violative nature of *particular* conduct is clearly established.

10   This inquiry must be undertaken in light of the specific context of the case, not as a broad

11   general proposition," a principle that is especially significant in a Fourth Amendment case.  *Id*.

12   at p. 7. (Original emphasis.)

13   By all accounts, plaintiff was intoxicated, belligerent and attempted to strike Officer

14   Pianta.  Four Oakland police officers confirm that benefit not only threw a hair tie at Officer

15   Pianta, but also ignored commands and threw at least one punch at Officer Pianta.

16   Not only do the video and four Oakland police officers agree that plaintiff threw a

17   punch (Declaration of Alexander Jason and Declaration of Owen T. Rooney, Exhibits Exhibit

18   C, Stolzman deposition, p. 76:3-13; Exhibit D, Phillips deposition, p. 15:19-16:24; Exhibit G,

19   Hight deposition, p.15:21-16:12; and Exhibit H, Carter deposition, p. 13:9-14:9) but so does

20   plaintiff's own expert.

21   Richard Ehle's FRCP 26 report states in pertinent part:

22   …and Sheehan's right hand can only be seen above her head for a second or two
     after having the purse removed from her right hand.  (Declaration of Owen T.
23   Rooney, Exhibit K, Ehle report, p. 23, ¶2).[6]

24   Officer Pianta was required to make a split-second decision in order to defend himself.

25   Under the totality of the circumstances, Officer Pianta acted in an objectively reasonable

26

27

28   ───────────────────────
     [6] See *Volterra Semiconductor v. Primarion, Inc.*, 796 F.Supp.2d, 1025, 1037-1038 (N.D. CA
     2011).

Case No. C14-03156 LB – Motion for Summary Judgment

1  manner.  His takedown of plaintiff was lawful.  Defending himself does not violate a clearly

2  established right.  A police officer is entitled to "breathing room" regarding their use of force

3  and qualified immunity allows for reasonable mistakes of fact and/or law.  *San Francisco* and

4  *Pearson*, *supra*.  Officers are trained to put resisting subjects on the ground to restrict their

5  movement. (Declaration of Owen T. Rooney, Exhibit G, Hight deposition, p. 44:3-11 and

6  Exhibit H, Carter deposition, p. 15:24-16:18.)

7      *Bryan*, *supra*, teaches us that the most important factor is the immediate threat to officer

8  safety.  Independent witnesses have testified plaintiff threw – or was in the process of doing so

9  – a punch at Officer Pianta.  Even plaintiff's own police practices expert agrees. (Declaration of

10  Owen T. Rooney, Exhibit K, Ehle report, p. 23, ¶2.)

11      Under Penal Code §835a, a police officer need not "retreat or desist from his efforts by

12  reason of the resistance or threatened resistance…."  Thus, he is lawfully entitled to stand his

13  ground.

14      Further, §835a provides an officer does not lose "his right to self-defense" by use of

15  reasonable force.  That is exactly what Officer Pianta did.  He is thus entitled to qualified

16  immunity.

17      The Declaration of Jared Zwickey, defendants' police practices expert, opined that

18  Officer Pianta exercised his right to self-defense by executing the arm bar takedown.  The

19  amount of force used was necessary and in accordance with his training.  The speed and

20  intensity of the takedown is governed by the threat posed.  (Declaration of Jared Zwickey, ¶¶6-

21  10.)

22      Of note, plaintiff also demonstrated the ability to defeat Officer Pianta's initial control

23  hold.  When confronted with plaintiff spinning out of the initial control, in conjunction with

24  plaintiff's battery, Officer Pianta had no alternative other than to take plaintiff to the ground she

25  could best be controlled.  That there were unintended consequences does not defeat qualified

26  immunity.

27  **C.**    **There Is No *Monell* Liability Against BART**

28      Local governments can be sued directly under Section 1983 if the public entity engages

1    in a policy or custom which has resulted in a violation of plaintiff's constitutional rights.

2    *Monell v. Department of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed 2d 611

3    (1978).

4          There are three ways to show a policy or custom of a municipality: 1) By showing a

5    longstanding practice or custom which constitutes the standard operating procedure of the local

6    government entity; 2) That the decision-making official was, as a matter of state law, a final

7    policymaking authority whose edicts or acts may fairly be said to represent official policy in the

8    area of decision; or 3) That an official for final policymaking authority either delegated that

9    authority to, or ratified the decision of, by a subordinate.  *Manetta v. City of Seattle*, 409 F.3d

10   1113, 1147 (9th Cir. 2005).

11         The practice or custom must consist of more than "random acts or isolated events" and

12   instead, must be the result of a "permanent and well-settled practice."  *Thompson v. City of Los*

13   *Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1988).

14         Of course, the viability of the *Monell* claim is dependent on the excessive force claim.

15   *McSherry v. City of Long Beach*, 584 F.3d 1129, 1147 (9th Cir. 2009*)*.  Proof of a single

16   incident of unconstitutional activity does not impose *Monell* liability unless there is proof of an

17   unconstitutional municipal policy.  *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 (1985).

18         Here, there is no evidence of a longstanding practice or custom which constitutes the

19   standard operating procedure of BART or any other decision-making official regarding use of

20   excessive force on plaintiff.  Furthermore, there is no evidence that BART failed to train,

21   supervise or discipline Officer Pianta.   In fact, BART has an aggressive training program that

22   requires officers to receive more than three times the annual POST requirement.  (Declaration

23   of Jared Zwickey, ¶¶11-14.)

24         BART also has a multi-level Use of Force Review process.  In addition, Internal Affairs

25   and the Office of Independent Police Audit can conduct their own investigations into an

26   excessive force claim.   The goal is to ensure transparency within the BART Police Department.

27   Thus, BART does not simply ratify alleged constitutional violations.  If BART simply "rubber

28   stamped" constitutional violations, BART would not have a detailed Use of Force Review

1   process which includes a review by both the Deputy Chief and Chief of Police and during

2   which anyone in the review process can refer to the investigation to Internal Affairs for even a

3   more detailed investigation.  (Declaration of Kenton Rainey ¶4-8 and Jared Zwickey ¶¶11-13)

4           Accordingly, BART is entitled to summary judgment regarding the third cause of

5   action.

6   **D.    There Was No Constitutional Violation for a Civil Code §52.1 Claim**

7           The elements of a Civil Code §52.1 excessive force claim are "essentially identical" to a

8   §1983 claim.   Where a plaintiff's claims under the federal and state Constitutions are co-

9   extensive "the discussion of a plaintiff's federal constitutional claim resolves both the federal

10  and state constitutional claims."  *Knapps v. City of Oakland,* 647 F.Supp.2d 1129, 1168 (N.D.

11  CA, 2009).

12          As held in *Rodriguez v. City of Fresno,* 819 F.Supp.2d 937, 954  (E.D. CA 2011) "in

13  order to maintain a claim under the Bane Act, the coercive force applied against a plaintiff must

14  result in an interference with a separate constitutional or statutory right.  It is not sufficient that

15  the right interfered with is the right to be free of the force or threat of force that was applied."

16  *Dorger v. City of Napa,* 2013 U.S. Dist. LEXIS 153696 at p. 34 (October 24, 2013) held "the

17  Bane Act was intended to address only egregious interferences with constitutional rights, not

18  just any tort.  Interfering with the constitutional right must itself be deliberate or spiteful."

19          Recognizing that Officer Pianta acted in self-defense, there cannot be an "egregious"

20  constitutional violation giving rise to a Bane Act cause of action.  By all accounts, plaintiff was

21  the aggressor and Officer Pianta simply acted in self-defense and pursuant to his training.

22  Officer Pianta's conduct was not "spiteful."

23          Accordingly, BART and PIANTA are entitled to summary judgment regarding the

24  fourth cause of action.

25                      **V.    CONCLUSION**

26          Plaintiff was unruly and belligerent.   More to the point, she displayed threatening

27  behavior to Officer Pianta by trying to punch him in the face.  Officer Pianta acted appropriately

28  and pursuant to his training to defend himself from the imminent threat posed by plaintiff. This

Case No. C14-03156 LB – Motion for Summary Judgment

1   case is a quintessential example that there can be unintended and unfortunate consequences of

2   an officer's reasonable and legal use of force.

3   DATED:  January 7, 2016                    EDRINGTON, SCHIRMER & MURPHY LLP

4

5                                              By ____/s/ Owen T. Rooney_____
                                                   Owen T. Rooney, Esq.
6                                                  Attorneys for Defendants BAY AREA
                                                   RAPID TRANSIT DISTRICT and NOLAN
7                                                  PIANTA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C14-03156 LB – Motion for Summary Judgment